John Houston Scott   (SBN 72578)
Lizabeth N. de Vries   (SBN 227215)
**SCOTT LAW FIRM**
1375 Sutter Street, Suite 222
San Francisco, CA 94109
Tel:  (415) 561-9600
Fax: (415) 561-9609
Email: tposey@scottlawfirm.net

Attorneys for Plaintiff,
Annette M. Filena

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA –OAKLAND DIVISION

| | |
|---|---|
| ANNETTE M. FILENA, individually and as successor in interest for decedent, Debra Kincaid,<br><br>Plaintiff,<br><br>v.<br><br>ALAMEDA COUNTY MEDICAL CENTER– JOHN GEORGE PSYCHAITRIC PAVILLION and DOES 1-100, inclusive.<br><br>Defendants. | Case No.: C 07 – 05462 SBA<br><br>Hon. Saundra B. Armstrong<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1) Wrongful Death, Cal. Civ. Proc. §377.60<br><br>2) Dependent-Adult Abuse, Cal. Wel. & Inst. Code §15600 *et seq.*;<br><br>3) Negligence, Cal. Gov't. Code §§ 815.6, 815.2; and,<br><br>4) Negligence *Per Se*.<br><br>***JURY TRIAL DEMANDED*** |

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ANNETTE M. FILENA, individually and as successor in interest to the decedent, Debra Kincaid, complains against defendants and each of them and alleges causes of action as follows:

## PARTIES

1.  Plaintiff ANNETTE FILENA is and was at all times relevant hereto a citizen of the United States. She is the mother, heir through intestate succession and successor in interest of the decedent, Debra Kincaid.

2.  The decedent, Debra Kincaid, was born on 12/7/58, and suffered from mental illness including schizoaffective disorder.

3.  Defendant ALAMEDA COUNTY MEDICAL CENTER– JOHN GEORGE PSYCHAITRIC PAVILLION (hereinafter "ACMC") is and was at all times relevant hereto a municipal hospital with a psychiatric department located in the John George Psychiatric Pavilion in San Leandro, California. The public hospital is organized and operating under the laws of the State of California. It is and was at all time relevant hereto a locked skilled-nursing facility. It is also licensed and regulated by the State of California Department of Health Services. During all relevant times, the ACMC and Does 1-100 provided medical care and treatment to the decedent, Debra Kincaid, a gravely disabled adult, while she was in this locked facility.

4.  The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 100 inclusive, are unknown to the plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a defendant was responsible in some manner for the events and happenings referred to herein. Plaintiff will amend the complaint when the true identities of the unknown defendants become known.

5.  At all times herein mentioned each of the defendants was the agent, servant or employee of each of the remaining defendants and was at all times acting within the course and scope of said agency and employment.

6.  Each individual defendant to be named in the future, if any, may be indemnified by the employer, the ACMC, under Cal. Gov't. Code § 825 *et. seq.*

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

7.  Plaintiff has exhausted the requisite administrative remedies and has complied with the requirements of California Government Code § 910 *et seq.* Plaintiff filed a tort claim against the Alameda County Medical Center on 2/6/07, which the ACMC rejected on 3/23/07.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

8.  On 11/30/06, Debra Kincaid (hereafter referred to as "Debra") was admitted to the ACMC after being involuntarily detained under Cal. Wel. & Inst. Code Section 5150.

9.  Plaintiff is informed and believes and thereon alleges that shortly after the 72-hour period for the Cal. Wel. & Inst. Code § 5150 passed on or about 12/3/06, Debra sought release on multiple occasions from the ACMC. In response to her requests, ACMC agents including Alfeo Reminajes, M.D. refused to release Debra from their locked facility, but instead requested that Debra be involuntarily conserved on 12/6/06. The family was not notified of any proceeding is informed and believed that Marie Alfonso was to be appointed her conservator as of 12/14/06.

10. In the ACMC's Intake Evaluation Form dated 11/30/06, Debra is described as alert and oriented. She was moving around the room, singing a song about beer, and at one point voluntarily dropped to the ground to demonstrate her strength by completing 9 push-ups.

11. Upon admission and throughout her stay at ACMC, Debra and her mother advised the ACMC agents that she suffered from sleep apnea and required a CPAP machine while she slept. ACMC agents allowed Debra to use her CPAP machine during her previous hospitalization on 9/23/06. But for this hospitalization, ACMC agents refused to permit her to use the CPAP machine. Debra also advised ACMC staff that she was diabetic, which was also noted in her medical records.

12. Plaintiff alleges on information and belief that ACMC staff failed to treat Debra's sleep apnea and diabetes during her stay from 11/30/06 through her death on 12/30/06.

13. From 12/13/06 through 12/27/06, the ACMC records, including but not limited to its Daily Psychiatric Progress Notes, Progress Records, ACMC Occupational/Activity Therapy Participation Logs and medical notes state that Debra complained about feeling overmedicated, experiencing episodes of dizziness, feeling drowsy and having a dry cough. The staff further

SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

noted that Debra appeared progressively more withdrawn, poorly kempt, mildly tremulous and unsteady on her feet. During this period, the ACMC records demonstrate that Debra's communication, socialization, and motor skills significantly declined.

14. On 12/28/06, the ACMC records state that Debra was observed with tremors, off balance with an unsteady gait, and required assistance to ambulate to the bathroom. She was observed slumped over her bed, or sitting up in bed, hunched over. The patient was reported to be falling asleep in her breakfast. Further, she had garbled speech and was difficult to understand. She was asked to but could not write her own name. The charge registered nurse notified Debra's treating psychiatrist, Alonzo Johnson, M.D., that she was over medicated and so weak that she could not stand or feed herself. He responded by instructing the staff to discontinue assisting Debra with activities such as feeding.

15. Plaintiff alleges on information and belief that Debra continually requested that she be seen by a different doctor than Alonzo Johnson, M.D. Debra's request was finally granted on 12/29/06 when she was evaluated by a doctor specializing in internal medicine, Ray Yeh, M.D., who noted that her sedation was probably secondary to medications and ordered that the ACMC discontinue Ativan and Benadryl.

16. On 12/29/06, despite the recommendations from Dr. Yeh, the treating psychiatrist Dr. Johnson wrote that Debra was "demonstrating more dependent behavior" and "flu-like symptoms" and wrote an order for Ativan as a PRN, Benadryl, Lithium, Haldol, Cognetin, and cold medication including nasal spray.

17. Plaintiff alleges on information and belief that on 12/29/06, Debra presented her request for release at a hearing before ACMC managing agents, which they denied.

18. Thereafter, the ACMC agents administered cold medications, and, two more doses of Ativan on 12/30/06 at 00:10 and 06:00 a.m.

19. During the month of December, nurses, occupational therapists, family members, the patient herself and patients' rights advocates reported to the Multidisciplinary Team in charge of Debra's care that they observed adverse effects of psychoactive medications and drug-drug

- 3 -

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

interactions by conveying concerns about the patient's slurred speech, difficulty walking, drowsiness, abnormal vital signs, high blood sugar, tremors and lack of coordinated movements.

20. During the month of December 2006, plaintiff frequently communicated with staff at ACMC, including but not limited to Ellen Woods, a social worker at ACMC, to express her concerns that Debra's health was deteriorating significantly. On 12/29/06, plaintiff implored Ms. Woods to do something about Debra's deteriorating physical condition. During this conversation, plaintiff expressed that she was afraid that Debra was going to die at ACMC. Ms. Woods assured her that her daughter was "fine."

21. On 12/30/06, at 7:30 a.m., Debra was found unresponsive on the floor next to her bed in her room in Unit B of the ACMC John George Psychiatric Pavilion. Debra was transferred to an acute care emergency facility at Eden Medical Center and was pronounced dead shortly after arrival.

22. Plaintiff alleges on information and belief that Debra's death was caused by the combined effects of psychiatric medication, cold medication, untreated diabetes mellitus and untreated sleep apnea while she was forced to remain in the custody and control of a locked facility, ACMC.

23. Defendants knew or should have known from the facts available to them that failing to (1) plan for or implement patient care that addressed Debra Kincaid's diabetes and sleep apnea; (2) evaluate and monitor this patient's risk for adverse effects of psychoactive medications and drug-drug interactions; or (3) ensure that necessary equipment including but not limited to a CPAP machine and an electrocardiogram machine be available to prevent harm would cause Debra Kincaid serious harm or death.

24. As a result of the acts and omissions alleged herein, Debra Kincaid died.

///
///
///
///
///

## DAMAGES

25. The decedent suffered general damages including pain and suffering due to the defendants' acts and omissions that ultimately led to her medically slowed and tortured death, in an amount to be determined according to proof.

26. Plaintiff incurred burial and funeral expenses in an amount to be determined according to proof.

27. Plaintiff has suffered and will continue to suffer loss of society, comfort, affection, and familial relations in an amount to be determined according to proof.

28. The acts and/or omissions of the individual defendants, either those to-be named or identified as Does, and each of them, were willful, wanton, reckless, malicious, and oppressive. Plaintiff seeks punitive damages against non-public entity defendants, and any statutorily permissible heightened remedies against all defendants.

29. The plaintiff was required to retain counsel and is entitled to costs and attorneys' fees should she prevail in this action.

### FIRST CAUSE OF ACTION
[Wrongful Death, Cal. Civ. Proc. § 377.60]

30. The plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

31. Defendants and each of them, negligently, recklessly and/or willfully failed to comply with the applicable provisions of California laws set forth below in the second, third and fourth causes of action, and which include the following:

   a. Provide skilled-nursing care and physician and psychiatric services;

   b. Follow, implement, and adhere to all medical orders;

   c. Provide Debra with all necessary equipment to ensure her health and safety, including but not limited to a CPAP machine and the use of an electrocardiogram;

- 5 -

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

      d.      Provide Debra with prescription diabetic medication and monitor blood glucose levels and blood levels as required when prescribing and administering psychotropic drugs;

      e.      Monitor, accurately record, report and adjust Debra's condition and responses to psychotropic and drug-drug interactions;

      f.      Report meaningful changes in Debra's health and well-being to the attending physicians and psychiatrists;

      g.      Establish and implement a patient-care plan for Debra based upon and including without limitation an on-going process of identifying her needs;

      h.      Follow proper nursing, physician and psychiatric care standards to maximize the health, safety, and well-being of Debra;

      i.      Note and properly react to emergency conditions and timely transfer Debra to an acute care facility or otherwise act when conditions so indicate; and

      j.      Provide appropriate screening, hiring requirements, training and supervision to all ACMC agents entrusted with Debra's care.

      k.      Comply with California Welfare & Institutions Code to ensure that the family was informed so that they could participate in Debra's care, including but not limited to the right to: be informed about her care (Cal. Wel. & Inst. Code § 5238.1); participate in treatment and rehabilitation decision (*Id.* at §§ 5600.2(a)(2), 5600.4(c)); be advised of certification hearings, judicial review, conservatorship hearings, and other due process proceedings (*Id.* at §§ 5256.4(c), 5276, 5350.2); appointed conservator or nominate conservator based on preferences for family members (Cal. Prob. Code §§ 1810 – 1813, *et seq.*).

32.      Debra Kincaid died as the result of the Defendants' acts and omissions as alleged herein.

33.      The ACMC is liable for the acts and omissions of their agents and employees under the doctrine of *respondeat superior*.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

///

///

## SECOND CAUSE OF ACTION
[Dependent-Adult Abuse, Cal. Wel. & Inst. Code §§ 15600, *et seq.*]

34. The plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint, including but not limited to paragraph 31.

35. Pursuant to the provisions of California Welfare and Institutions Code §15610.23, decedent Debra Kincaid was at all times relevant hereto a dependent adult.

36. Pursuant to the provisions of California Welfare and Institutions Code §15610.17, ACMC and Does 1-100 were at all times care custodians for or in a trusting relationship with decedent, Debra Kincaid.

37. ACMC and Does 1-100 engaged in physical abuse against Debra Kincaid by giving her psychotropic drugs for improper purposes under Cal. Wel. & Inst. Code §15610.63(f).

38. ACMC and Does 1-100 engaged in neglect against Debra Kincaid by failing to provide for her physical and mental-health needs under Cal. Wel. & Inst. Code §15610.57.

39. In doing the acts and omissions complained of herein, ACMC and Does 1-100 failed to use the degree of care that a reasonable person in the same situation would have used to protect Debra Kincaid from health and safety hazards and provide for her physical and mental-health needs by failing to:

   a. implement a care plan which addressed the decedent's diabetes and sleep apnea;
   b. ensure that the drugs that were prescribed and administered by the defendants would not cause serious harm to the decedent;
   c. provide decedent with adequate care or equipment including but not limited to a CPAP machine and an electrocardiogram; and,
   d. comply with the state and federal requirements listed in the third cause of action below and incorporated herein by reference.

40. Defendants' acts and omissions alleged herein constituted neglect and physical abuse, which caused the decedent pain and suffering prior to her death. Further, they caused her death.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

41. Defendants' acts and failure to act were willful and done with recklessness, malice, oppression and or fraud, and with deliberate disregard of the likelihood that the decedent would suffer harm or death.

42. Defendants' and their agents' conduct was authorized by the defendants' trustees, officers, directors, managing agents or treating psychiatrists or physicians. Alternatively, this conduct was ratified by a defendants' trustee, officer, director, managing agent, or treating psychiatrist or physician who knew of the agents' wrongful conduct and adopted or approved the conduct after it occurred. Plaintiff incorporates by reference paragraph 17 here.

43. The ACMC is liable for the acts and omissions of their agents and employees under the doctrine of *respondeat superior*.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION
[Negligence, Cal. Govt. Code §§ 815.2, 815.6]

44. The plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint, including but not limited to paragraph 31, and those paragraphs citing further violations of Debra's rights in the first, second, and fourth causes of action.

45. Defendants owed mandatory duties to the decedent, a dependent adult placed in the County's custody at ACMC.

46. Defendants may also be liable for negligence if their agents would be individually liable for wrongdoing and the doctrine of *respondeat superior* applies.

47. Defendants were negligent and breached their mandatory duties to provide appropriate and adequate medical care and treatment to the decedent while in their custody and care, including but not limited to state laws, regulations, and statutory duties, all of which were designed to protect individuals like this Plaintiff.

///

- 8 -
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

48. Decedent Debra Kincaid was at all times relevant hereto a patient in defendants' care with protections under the Patients' Bill of Rights under Title 22 of the California Code of Regulations, Div. 5 Ch. 1.

49. Plaintiff alleges on information and belief that despite the defendants awareness of the risks to Debra's health and well-being, defendants repeatedly and fragrantly violated several Title 22 sections, including but not limited to:

   a. failed to plan and implement patient care for Debra Kincaid's diabetes and sleep apnea under (1) 3-70215(c);
   b. ACMC's psychiatrists or clinical psychologists' failed to be responsible for the diagnostic formulation for their patients and the development and implementation of each patient's treatment plan under (2) 6-70577(d)(1);
   c. failed to identify or recommend to the administration the equipment and supplies necessary for emergency medical problems under (3) 6-70577(d)(4)(A);
   d. subjected Debra to physical abuse through the misuse of medications under 72315(b);
   e. failed to develop and/or implement a plan of care specifying the data to be collected for use in evaluating the effectiveness of the drugs and the occurrence of adverse reactions under 72319(j)(2);
   f. violated Debra's right to be free from mental and/or physical abuse under section 72527(a)(9);
   g. violated Debra's right to be free from the use of psychotherapeutic drugs for the purpose of patient discipline and/or for staff convenience under section 72527(a)(23)); and,
   h. violated Debra's right to be free from the use of chemical restraints other than during an emergency under section 72527(a)(23).

50. Decedent Debra Kincaid was at all times relevant hereto a patient in defendants' care with protections under the several California statutes, including the California Government Code and the Elder Abuse and Dependent Adult Civil Protection Act.

- 9 -

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

51. Plaintiff alleges on information and belief that despite their awareness of the risks to Debra's health and well-being, defendants repeatedly and flagrantly violated several California statutes, including but not limited to:

    a. Govt. Code § 855.4 to use due care in the provision of medical services;

    b. Govt. Code § 855(a) to provide adequate or sufficient medical equipment, personnel or facilities;

    c. Govt. Code §855.8 to use due care in administering treatment prescribed for mental illness;

    d. Govt. Code § 856 to use due care in carrying out the conditions of confinement for mental illness; and

    e. Elder Abuse & Dependent Adult Civil Protection Act, Wel. & Inst. Code §§ 15600 *et seq.* to provide medical care for the physical and mental health needs of a dependent adult.

52. As a result of defendants' breach of their mandatory duties, and under the doctrine of *respondeat superior*, plaintiff and decedent suffered the injury and harm alleged herein.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
[Negligence *Per Se*]

53. The plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint, in particular the state laws and regulations cited in plaintiff's first, second, and third causes of action.

54. The plaintiff alleges that the defendants violated numerous state laws and regulations, cited above, all of which were written and intended to apply to this decedent for her survival claims and to this plaintiff for her wrongful death claims.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

///

///

///

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendants, as follows:

1. For compensatory and economic damages according to proof;
2. For general damages according to proof;
3. For punitive damages against the individual defendants according to proof;
4. For an award of attorneys' fees and costs;
5. For statutory fees and penalties, including but not limited to damages under Cal. Civ. Code § 3345 and Cal. Wel. & Inst. Code § 15675.
6. For an order directing the ACMC and its agents and employees to do the following:

    a. Prepare patient-care plans (1) **after** obtaining information from the patients and their families, and their previous medical records; (2) considering how to address sleep apnea and diabetes conditions; (3) where the Multidisciplinary Treatment Team monitors, reports, and reviews the plan upon any noted changes in the patients' physical or mental health.

    b. Provide training to staff regarding (1) comprehensive intake process to ensure that patients' medical histories and conditions are properly noted and considered in the patient's treatment plan; (2) medication management for psychiatric patients to identify and report symptoms for patients exhibiting over medication.

    c. Provide patients and staff with necessary equipment, including but not limited to CPAP machines and electrocardiograms.

    d. Ensure that psychiatrists, hospitalists/internists, and pharmacists are consulting about drug-drug interactions and how to manage psychiatric patients and their drug levels, and, that these issues are being communicated to staff who monitor the patients.

7. For an order appointing an independent monitor at the expense of ACMC to ensure compliance with Title 22 for a time to be determined by the Court.

- 11 -

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

8.  For prejudgment interest; and

9.  For other and further relief as the Court may deem just, necessary and appropriate.

Dated: December 5, 2007                                     SCOTT LAW FIRM

By_____/s/_____
Lizabeth N. de Vries
Attorney for plaintiff

## REQUEST FOR JURY TRIAL

The plaintiff respectfully requests a jury for those claims that a jury may determine.

Dated: December 5, 2007                                     SCOTT LAW FIRM

By_____/s/_____
Lizabeth N. de Vries
Attorney for plaintiff

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF